UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD EDMOND ADAMS,

   *Plaintiff*,

*v*.                                                              CASE NO. 12-CV-10430

COMMISSIONER OF                               DISTRICT JUDGE GEORGE CARAM STEEH
SOCIAL SECURITY,                                MAGISTRATE JUDGE CHARLES E. BINDER

   *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

####   A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability Insurance Benefits. A claim for Supplemental Security Income benefits has been granted and

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff is currently receiving these benefits. (Transcript, Doc. 6 at 31.) This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff was 54 years of age at the time of the most recent administrative hearing. (Tr. at 29, 73.) Plaintiff's employment history shows that Plaintiff worked as an equipment operator in heavy construction from 1982 until 1997. (Tr. at 100.) Plaintiff filed the instant claim on July 14, 2008, alleging that he became unable to work on December 31, 2002. (Tr. at 73.) The claim was denied at the initial administrative stage. (Tr. at 44.) In denying Plaintiff's claims, the Commissioner considered fractures of lower limb and diabetes mellitus as possible bases for disability. (*Id.*) On April 29, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Melvin B. Kalt, who considered the application for benefits *de novo*. (Tr. at 16-28; 29-43.) In a decision dated August 6, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 28.) Plaintiff requested a review of this decision on August 17, 2010. (Tr. at 12-15.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 3, 2012, when, after review of additional exhibits[2] (Tr. at 173-77, 425-30), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On February 1, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely

because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of

their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2003, and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 22, 2000, through his date last insured of December 31, 2003. (Tr. at 21.)[3] At step two, the ALJ found that Plaintiff's snowmobile accident with multiple injuries and a stroke were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21-22.) At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (Tr. at 23.) The ALJ also found that on the alleged disability onset date Plaintiff was 47 years old and, thus, a younger individual, i.e., between the ages of 18 and 49. (*Id.*) At step five, the ALJ found that Plaintiff could perform a full range of light work. (Tr. at 22-23.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 24.)

**E.    Administrative Record**

**1.    Prior to December 31, 2003**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was involved in a serious snowmobile accident on January 23, 2000. (Tr. at 32-33) Plaintiff attempted to return to work in the summer of 2003, and suffered a stroke in September 2003. (Tr. at 33.)

---

[3] I note that Plaintiff's application alleged an onset date of December 31, 2002, which Plaintiff still appears to stand by. (*See* Doc. 10 at 7) ("Plaintiff alleges a disability onset date of December 31, 2002, the date he completely stopped working . . . ."). However, the date of January 22, 2000, is significant because it is the date when "Plaintiff suffered a traumatic snowmobile accident resulting in numerous lower extremity fractures, derangement of the shoulder and other internal injuries." (Doc. 10 at 8.)

6

On January 25, 2000, two days after the snowmobile accident, Plaintiff's post-operative diagnoses included: multiple traumas; left femur fracture; right knee tibia-fibia fracture; multiple rib fractures; abdominal hepatic contusion; hematuria; blood loss anemia; insulin dependent diabetes mellitus; atelectasis; right ischial acetatabular fractures; and L1 and L5 traverse process fractures. (Tr. at 196.)

On September 11, 2003, Plaintiff was treated for right-sided weakness. (Tr. at 215.) Danny Watson, M.D., diagnosed "[l]acunar infarct deep white matter to the left hemisphere, other localizations in the cortical spinal tract . . . ." (Tr. at 216.) Daniel Yakima, D.O., also noted "cerebrovascular incident." (Tr. at 220.)

A Psychiatric Review Technique completed on September 19, 2008, by Leonard C. Balunas, Ph.D., concluded that between December 31, 2002, and December 31, 2003, there was insufficient evidence to make a medical disposition. (Tr. at 178.) A Mental RFC Assessment completed on September 19, 2008, by Dr. Balunas concluded that Plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions, his ability to maintain attention and concentration for extended periods, and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, that he was moderately limited in his ability to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, and to respond appropriately to changes in the work setting, but that he was otherwise not significantly limited in understanding, memory, sustained concentration and persistence, social interaction or adaptation. (Tr. at 192-93.) The assessment concluded that Plaintiff was "unable to perform even unskilled work on a sustained basis." (Tr. at 194.)

    **2.    After December 31, 2003**

On November 1, 2005, Plaintiff was treated for foot pain. It was noted that Plaintiff was "a 49-year-old diabetic with a history of neuropathy in his right foot and prior surgery. He apparently works in construction and dropped some heavy machinery on his foot about three weeks ago, had immediate pain." (Tr. at 225.) Plaintiff was diagnosed with "[f]racture of the second and third

7

metatarsal heads" and was discharged with instructions not to bear any weight and to follow up with Dr. Manoli, who had operated on his ankle in the past. (Tr. at 226.)

The record contains evidence of several other occasions after the date last insured when Plaintiff sought treatment for cerebrovascular or ischemic events. (Tr. at 229-31 (June 2006), 241-61 (June 2008), 275-325, 328-29 (August 2008).)

Plaintiff was examined at the request of the Department of Human Services ("DHS") in 2008 (Tr. at 326-27) and at the request of Disability Determination Services ("DDS") on August 31, 2008, by Pamela Herringshaw, Ph.D. (Tr. at 332-39.) Plaintiff was diagnosed with dementia due to multiple strokes, personality change due to multiple strokes, and major depressive disorder; he was assessed a GAF score of 40 and given a "poor to fair" prognosis "depending upon the course of recovery." (Tr. at 338.)

Plaintiff was also examined at the request of DDS by Jared Griffith, D.O., on September 6, 2008. (Tr. at 340-43.) Dr. Griffith noted weakness within the upper and lower extremities on the right and a mild facial droop, that Plaintiff's speech was slurred, and that Plaintiff was "markedly unsteady" and "would benefit from utilizing an assistive device for ambulation." (Tr. at 343.)

Plaintiff began treating with Sayyed A. Sohrab, M.D., on June 7, 2008. (Tr. at 330-31, 372.) On December 4, 2009, Dr. Sohrab indicated that Plaintiff "had significant balance issues, which made it difficult to work [and which] could have been at least partly related to a stroke in 2003." (Tr. at 372.)

Yarlagadda K. Prassad, M.D., evaluated Plaintiff on January 1, 2010, and diagnosed "Major Depression Recurring Severe" and "Panic Disorder w/o Agoraphobia"; Dr. Prassad assessed a GAF score of 45 and gave a "poor" prognosis. (Tr. at 377.)

    **F.    Analysis and Conclusions**

    **1.    Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a full range of light work with some nonexertional limitations. (Tr. at 22-23.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's evaluation of the treating physicians' restrictions is not supported by substantial evidence. (Doc. 10 at 12-17.) The treating physicians Plaintiff refers to are Drs. Sohrab and Watson and Plaintiff cites to their opinions contained on pages 425 to 430 of the administrative record. (*Id*. at 13-17; Doc. 14 at 9-10.) As noted earlier in this Report, however, pages 425 to 430 of the administrative record were admitted into evidence at the Appeals Council stage and are not a part of the record subject to judicial review for

substantial evidence.[4] *See Cline,* 96 F.3d at 148; *Cotton,* 2 F.3d at 696. Since this Court cannot consider these records, I suggest that Plaintiff's argument regarding the ALJ's treatment of the opinions of Drs. Sohrab and Watson is without merit.[5]

Plaintiff also contends that the ALJ erred in finding that Plaintiff worked in 2005 because he dropped a cement saw on his right foot in November of that year. (Doc. 10 at 16-17; Doc. 14 at 8.) In concluding that there was no substantial gainful activity after the alleged disability date, the ALJ noted that Plaintiff reported income of $6,261.40 in 2003 and that Plaintiff "worked in 2005 but no earnings were reported for that year." (Tr. at 21.) Plaintiff argues that, consistent with his testimony, he dropped the cement saw while helping a friend, that he "is not prohibited from doing odd jobs or helping a friend," and that "[t]here is no evidence of any substantial, gainful employment after the claimant's alleged onset date other than the few weeks he was able to return to work in the summer of 2003." (Doc. 14 at 16 (emphasis in original).) The ALJ, however, agreed and expressly concluded that there was no substantial gainful activity after the alleged disability date. (Tr. at 21.) Therefore, I suggest that Plaintiff's argument is of no moment.

Plaintiff further contends that the ALJ erred in finding that there was "no significant follow up" to Plaintiff's treatment for the January 23, 2000, snowmobile accident or his September 11, 2003, stroke. (Doc. 10 at 15; Doc. 14 at 5-7.) I suggest that the ALJ's findings were supported by substantial evidence. In order to be eligible for disability insurance benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i)(2)(c); 423(a), (c), (d). "If a clamant is no longer insured for disability insurance benefits at the time [he] files [his] application, [he] is entitled to disability insurance benefits only if [he] was disabled before the date [he] was last insured." *Renfro v. Barnhart*, 30 F. App'x 431, 435 (6th Cir. 2002). Therefore, the ALJ generally only considers evidence from the

---

[4] I further note that the ALJ's decision does not list exhibit 24F, which is comprised of pages 425 to 430 of the administrative record, as one of the exhibits considered by the ALJ. (Tr. at 28.)

[5] The Commissioner also argues that Dr. Sohrab may not be a treating physician, that Plaintiff mischaracterizes his statements, and that the opinions cited by Plaintiff may not be medical opinions. (Doc. 13 at 15.) The merits of these arguments may provide an alternative basis for the conclusion recommended herein but are not addressed in this Report.

alleged disability onset date through the date last insured. *King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990). "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.,* 88 F. App'x 841, 845 (6th Cir. 2004). In order for evidence of the plaintiff's condition after the date last insured to be relevant to the disability decision, the evidence "must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003). If the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

Certainly, Plaintiff suffered many injuries at the time of his snowmobile accident; however, the record is devoid of any evidence beyond the initial treatment given. Similarly, although there is significant evidence of Plaintiff suffering more cerebrovascular or ischemic events beginning in 2006 that eventually resulted in disability, there is in this record simply no evidence supporting disability before December 31, 2003. (Tr. at 229-31(June 2006); 241-61 (June 2008); 275-325, 328-29 (August 2008).) The only potential evidence supporting disability before December 31, 2003, is found in the RFC Assessment.[6] There, Dr. Balunas, a non-examining physician, concluded that Plaintiff was "unable to perform even unskilled work on a sustained basis." (Tr. at 194.) However, this conclusion is not entitled to any particular weight since "[i]t is well settled that the ultimate issue of disability is reserved to the Commissioner." *Kidd v. Comm'r*, 283 F. App'x 336, 341 (6th Cir. 2008); *Turner*, 381 F. App'x at 492-93. As to his underlying assessments supporting his conclusion, although an ALJ is is required to give good reasons for the weight given treating sources, this requirement does not apply to non-examining sources. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). I therefore suggest that the ALJ did not err in failing to explain why he did not accord any weight to Dr. Balunas's conclusions in the RFC assessment.

---

[6] I note that although the Psychiatric Review Technique indicated the relevant dates assessed, the RFC Assessment did not. Therefore, it is unclear whether the assessments are relevant to the time eprid before the date last insured.

Accordingly, I suggest that the ALJ's decision is supported by substantial evidence and should be upheld.

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                      s/ Charles E Binder
                                      CHARLES E. BINDER

Dated: January 10, 2013                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: January 10, 2013             By      s/Patricia T. Morris
                                                      Law Clerk to Magistrate Judge Binder